PROVOSTY, J.
Thomas Lamont was owner of a dredging outfit, consisting of two dredge boats, barges, etc. This outfit was held in pledge by Sweet & McEarlain for the security of a note of Lamont’s for $3,000. Whether this pledge was accompanied by possession and therefore was perfect, does not appear. In the early part of 1900, J. H. Hoffman, desiring to have Lamont do some dredging work for him, released the dredges from the pledge by indorsing the note secured by the pledge. For Hoffman’s protection on the indorsement, -Lamont, on the 7th of February, 1900, executed in his favor a bill of sale of the outfit. The agreement was that Hoffman was to have the dredges repaired, and was to advance money for operating them, and that the earnings were to be imputed first to the reimbursement of the advance for operation, next to the. payment of the indorsed note, and lastly to the repair expenses. Lamont continued in charge and in possession of the dredges, and operated them, he says, for himself as owner. Hoffman, on the other hand, says that Lamont was to be in charge as his agent at a salary of $50 per month. To all outward appearance Lamont had sole and exclusive charge of the dredges. He made the contracts for their employment, and received the payments under the contracts, except such as he directed to be made to Hoffman.
In June, 1901, Hoffman and Lamont had a settlement, by which it appeared that out of the earnings of the dredges the $3,000 indorsed note had been paid, and all operating expenses, and the amount due by Lamont to Hoffman was $2,375, representing balance due on the rebuilding and repairs account, which originally had amounted to $4,13S 11. For this $2,375, plus an added amount of $125 for discount, Lamont made his note in favor of Hoffman.
On the 28th of October, 1901, Lamont entered into a written contract with one WP. Weber, the latter acting as trustee for three creditors of Lamont, namely, Kelly, Weber & Co., D. R. Swift, and the Calcasieu National Bank. After reciting that Lamont is the owner of the dredging outfit, but that J. H. Hoffman holds a bill of sale for same “with vendor’s lien,” this contract goes on to recite that Lamont recognizes Weber as trustee for said creditors, and that said trustee is empowered to receive all the earnings of said dredges, and that he shall pay 75 per cent, of said earnings to Lamont, and attribute the balance first to the payment of a note of $2,500 due to Hoffman, and then to the payment of the creditors for whom Hoffman was trustee. The contract further recites that Lamont obligates himself to operate the dredges, and to pay all the operating expenses; and it further recites that, after the payments shall have been made, the vendor’s lien held by Hoffman shall be canceled.
Hoffman subsequently made himself a party to this contract by agreeing to it, and he accordingly executed a bill of sale of the dredging outfit to Lamont for $4,000, this $4,000 being the aggregate amount due to himself and the other creditors for wliom Weber was trustee; and he delivered this bill of sale to the trustee, Weber. He says that the bill of sale was not to be turned over to Lamont until the $2,500 note "had been paid, but Weber testifies that there was no such restriction. There was paid to Hoffman $300 under this arrangement
In December, 1902, the same W. P. Weber and the Elstner-Martin Grocery Company, Limited, and another creditor, H. C. Drew, issued execution against Lamont, and caused the dredging outfit to be seized and advertised for sale.
Hoffman intervened in the suit, claiming *897 to have a privilege upon the dredges for the balance of $2,200 due on his'note. He alleged that the debt was due for expenses incurred in rebuilding one of the dredge's and repairing the other, and for money and supplies advanced by him for the operation of the dredges. He prayed that his said privilege be recognized, and that his claim be paid by preference out of the proceeds of the sale.
The opposition was filed on January 24, 1903. Pleas and exceptions were filed by defendants, and thereupon Hoffman filed a supplemental and amended petition, in which he reiterated the allegations of his original petition, and alleged further that, in addition to the privilege alleged in his said petition, he had a right of pledge on the dredges, because of the bill of sale executed in his favor by Lamont in February, 1900, and of his continued possession of said dredges until their seizure. He reiterated the prayer of his original petition, and further prayed that his right of pledge be recognized and enforced.
Other pleas and answers were filed, and in April, 1904, Hoffman filed another supplemental and amended petition. In this petition, after first saying that he reiterates the allegations of his original petition and of his first supplemental petition, he proceeds to relate all the facts hereinabove stated, except the arrangement by which Weber was made trustee, and a bill of sale was executed to Lamont. He alleges that Sweet & Mc-Farlain had possession of the dredges, and that Lamont’s possession of same thereafter was merely as his employé. He alleges that “he retained a vendor’s lien on said dredges by virtue of the transaction aforesaid, and still retains same, and is entitled to be paid by preference out of the proceeds of the sale.” He prays that his said privilege be recognized and enforced, and “for judgment as prayed in the original and supplemental petitions.”
Under these facts, which were all proved without objection, it is very evident that Hoffman has neither privilege nor right of pledge. He has no vendor’s privilege, because he never was owner of the dredges; and he has no other privilege, because there is no law according a privilege for expenses incurred in rebuilding and repairing dredge boats.
And he has no pledge, because by the trusteeship arrangement he put an end to the only pledge he ever had — if, indeed, that pledge was ever perfected by possession. The trusteeship was evidently intended to take the place of the pledge. The execution of the act of sale to Lamont is open to no other construction than that it was intended to put an end to the pledge that had theretofore existed. The intention may have’ been that the pledge should be supplanted' by a vendor’s privilege, and we find that Hoffman is claiming a vendor’s privilege in this case; but, as above stated, Hoffman,, not having ever been owner, no vendor’s, privilege could arise in his favor.
Judgment affirmed.